[No. 16127.  Department Two.  February 3, 1921.]

C. P. THOMAS *et al., Respondents,* v. CITIZENS' REALTY COMPANY, *Appellant.*[1]

LANDLORD AND TENANT (114, 115) — RENT — ACTIONS — VALUE OF GROUND RENT—EVIDENCE. In an action to recover ground rent, based upon five per cent of value appraisements to be made every five years, similar transactions in the vicinity are properly considered but are not conclusive criterions of value, especially where the relations of the parties made it not unreasonable to allow the sellers something over the actual value; nor is a prospectus of the "Somers System of Valuation" to be considered when it was not put in evidence.

SAME. In such a case, a valuation of $119,115.18 is shown, where the preponderance of the evidence was that the corner influence amounted to fifty per cent, instead of one-third as found by the court, and computed on that basis the above sum would be reached.

Appeal from a judgment of the superior court for Spokane county, Hurn, J., entered December 9, 1919, upon findings in favor of the plaintiff, in an action to determine ground rent, tried to the court. Modified.

*Post, Russell & Higgins,* for appellant.

*Danson, Williams & Danson (R. E. Lowe,* of counsel), for respondents.

TOLMAN, J.—Appellant is the owner of a tract of real estate located at the southeast corner of Post street and Main avenue, in the city of Spokane, upon which there is a ground lease running for a long term,

[1]Reported in 195 Pac. 209.

now held by respondent as assignees of the original lessees, which provides that the lessees shall pay as ground rent five per cent of the value of the land exclusive of improvements, such value to be found by appraisement at five-year periods and the rent to be paid accordingly for the period of five years following the time fixed for such appraisement. According to the terms of the lease, the value of the land was to have been determined by appraisement in December, 1918, for the purpose of fixing the amount of the rental for the five-year period next ensuing, and at that time each of the parties appointed an appraiser, but these two appraisers were unable to agree upon the value of the ground, and were unable also to agree upon a third appraiser as provided for in the lease, and because of such failure this action was brought to determine the value for the ensuing five-year period. The cause was tried to the court without a jury, and the court found such value to be $101,085. The owner of the land, who was the defendant below, has prosecuted this appeal from that judgment.

Numerous errors are assigned which we do not find necessary to consider in detail, because there is only one question involved, and that a question of fact only, which is, What was "the reasonable and fair and actual value of said premises," such being the language of the lease? The trial court, in what appears to have been a carefully considered memorandum opinion, said:

"For the purpose of aiding the court in fixing the values of the property in question, each party has offered the testimony of experts. The opinions of these experts are so hopelessly in conflict as to the value and the range of estimates so far apart that they afford but little assistance to the court in determining values; however, there are a few facts upon which there is little dispute, which are of material benefit in estimating

the value of the property. There is little dispute as to the value of a foot by 150 feet on an inside lot fronting Main avenue, being $1,500. There is practically no dispute that the Somers system, a standard for land valuation, is used by experts in determining the value of property of this character. I have availed myself of this system so far as I am able to understand that it is of service. The standard of value by this system is 1 foot by a 100, and that one foot by 150 feet is 115% of that standard; this fixes the value of 1 foot by a 100 on an inside lot on Main avenue at $1,304.34. The property under consideration is practically 118 feet, and under this system there must be added 6.81% for the additional 18 feet, which, when computed makes 1 foot by 118 on an inside lot $1,393.16, or $79,410.12 for the whole 57 feet, to which the value of what is known as the corner influence should be added. There appears to be no definite and fixed rule for this influence, but from the testimony of the experts there is little conflict as to its ranging from 25% to 50%, and under all the evidence in this case I estimate this influence to equal one-third the value of 50 by 100 feet at the corner, or one-third of $65,217, which is $21,735. When these various sums are added together, they amount to $101,149.12, from which I deduct the value of 1-13/16 of an inch on Post street front, being the amount the lot is short of 118 feet on that street, making the net value of this lot $101,085, which sum I find to be the reasonable value of the lot for the five-year period of the lease from January 1, 1919, to January 1, 1924.''

After a careful study of what appears to be a thoroughly prepared and comprehensive abstract of the testimony, we can appreciate what was said by the trial court as to the hopeless conflict of the testimony and the apparent impossibility of harmonizing this testimony so as to draw therefrom a satisfactory result, and in the nature of things this is more difficult for us than for the trial court who saw and heard the witnesses. We are asked, since this is a trial *de novo,* to disregard the findings of the trial court entirely and

arrive at a conclusion from the evidence in the case without reference thereto. This argument is based chiefly upon the fact that the witnesses for appellant generally based their opinions of the value of this property largely upon two transactions: a lease to the Palace Department Store of property directly across the street to the north, and a sale to the Crescent Department Store of property lying a few feet to the east.

These transactions are proper to be considered in a general way, but are not conclusive criterions and cannot be followed absolutely to the exclusion of the testimony regarding sales of other property in the general vicinity; because, with reference to the lease to the Palace Department Store, it appears that the tenant there affected was to pay as rental a certain percentage upon the actual cost of the building erected on the premises (which actual cost was carried as the value of the building throughout the term without re-appraisement), plus a percentage upon a reasonable or fair market value of the land as found by appraisement for each five-year period. It also appears that the value of the land, as fixed for the corresponding period in the Palace Department Store lease, was determined by agreement of the parties and not by appraisement; and since this agreement may have been reached by reason of some necessity upon the part of the tenant, or because of the cost of the building being less than its actual value at the time of re-appraising the land, the values thus arrived at are by no means conclusive. As to the sale of the property to the Crescent Department Store, the price at which that sale was made is not an absolute criterion, because the Spokane Dry Goods Company, the owner of the Crescent Store, was already the owner of the property to the east of that which it purchased, it desired to extend its space largely and erect a large, modern, well

equipped department store building several stories in height, and could therefore only consider property immediately adjoining that which it then owned. And Mr. Payne, an officer of that company, testified as follows:

"Q. Did it strike you as being an excessive price? A. It did not at the time, I didn't question the price. Q. Do you do it now? A. Since that time, yes. Q. It is sort of family matter, wasn't it? A. I wouldn't say it was, it was an out and out purchase of the property, although these men were members of our firm and dealing on both sides of the question. Q. They were stockholders? A. Yes and they made the price and it was accepted by the company. Q. And isn't it true Mr. Payne that another thing that entered into that was the fact that they were compelled to have that in order to carry out the building as you had planned it? A. We wanted it, yes."

While all of these gentlemen engaged in this transaction were men of honor, with the highest reputation for fair dealing, yet it is not unnatural for the owner to value his property somewhat in excess of its market value, and in a transaction such as Mr. Payne's testimony shows this to have been, it is not unreasonable to suppose· that the parties, understanding the situation fully, might be willing to allow the sellers something more than the actual value, or, in other words, might consider its prospective value in connection with their contemplated improvements. Nor would one or two isolated transactions necessarily form an absolute criterion in any event.

There is some evidence as to the net income received by the lessee, which might indicate a value less than that given by any witness, but this evidence is very incomplete and unconclusive, there being no attempt to show that the percentage named was figured on the actual value of the improvements, that the property

was economically handled, or even what the gross income was and what items were charged against the gross as operating expenses. Clearly this cannot be seriously considered, and if it could, we should then have to weigh against it the question of whether or not the property is underimproved, upon which there is some slight evidence *pro* and *con* in the record. So that we are forced to the conclusion that nowhere in the testimony can we find any absolute criterion for fixing the value of the property under consideration, and the best and fairest basis of value is that adopted by the trial court in his memorandum decision, which we have quoted.

Nor can we follow appellant in his attempt to apply to the testimony in this case what is known as the Somers System of Valuation, because nothing of the sort is in evidence here, except as the various witnesses have referred to their use of the Somers System in arriving at their opinions. We have been furnished a pamphlet entitled ''Prospectus of New York Somers System Service, a Standard for Land Valuation,'' but since it was not offered in evidence we do not care to undertake to use such publication as a basis for arriving at our conclusion here.

We do find, however, one thing apparently overlooked by the trial court, and that is that almost all of the witnesses in the case upon both sides agree in their opinion that the corner influence on this particular property amounted to fifty per cent, and most of them seem to be of the opinion that the corner influence affected the whole fifty-seven feet frontage on Main avenue, though one witness for respondent did limit that influence to fifty feet. We think the evidence preponderates against the opinion of the trial court that this influence was equal to only one-third, and was limited to fifty feet of the Main avenue frontage, and

that by a decided preponderance of the evidence the corner influence is established at fifty per cent and covers the whole fifty-seven feet.

Taking, then, the trial court's valuation of one foot by one hundred eighteen feet at $1,393.16 as inside property, adding to it fifty per cent for the corner influence gives $2,089.74 as the value of each one of the fifty-seven feet of Main avenue frontage, back for a distance of one hundred eighteen feet; multiplying this sum by fifty-seven gives $119,115.18, which should have been the value reached by the trial court. We are more convinced of the correctness of this result because of the fact shown by the record that, at the preceding appraisement five years before, the value of the property was fixed by the appraisers and accepted by both parties as being $117,833, for the five-year period ending December 31, 1919, and the testimony in the case of the witnesses who testified upon that subject was largely to the effect that values had not materially changed during such period. We do not mean to say that the preceding appraisement is evidence of the present value, but the fact that it was accepted and acted upon by both parties for a period of five years without protest, coupled with the testimony that there had been little or no change in values, which has been referred to, is as persuasive as almost any other evidence in the case. We are of the opinion that the judgment of the trial court must be modified as stated. It is so ordered.

HOLCOMB, MOUNT, MITCHELL, and MAIN, JJ., concur.